IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RONALD RICHARD CLOUD,**
For YOLANDA RENEE LEAR, Deceased Daughter

      **Plaintiff,**

v.                                                   **CIVIL ACTION NO. 3:09cv4**
                                                           **(Judge Bailey)**

**WALTER RICHARD PRITTS,**
**JOHN CHESHIRE,**
**DONALD SEE.**

      **Defendant.**

## REPORT AND RECOMMENDATION

On January 9, 2009, the *pro se* plaintiff, who is a state prisoner, filed what purports to be a wrongful death action pursuant to 42 U.S.C. §1983. On February 26, 2009, the case was referred to the undersigned magistrate judge. This matter is before the undersigned for an initial review and report and recommendation pursuant to 28 U.S.C. §1915(e)

### I. BACKGROUND

The plaintiff, who is currently incarcerated at the Mount Olive Correctional Facility in Mount Olive West Virginia, is the biological father of Yolanda Renee Lear ("Lear"). Lear was born on August 7, 1976 and died on or about August 28, 2006. Her death certificate indicates her death was homicide, and the immediate cause of death was asphyxia due to probable strangulation in the setting of physical assault. Walter Pritts ("Pritts") was charged with first degree murder and was eventually convicted of involuntary manslaughter in the Circuit Court of Hampshire County.

### II. THE COMPLAINT

In his complaint, the plaintiff alleges that Pritts deliberately beat and strangled Lear and threw her body face down in a ravine filed with about 10 inches of water. These actions, plaintiff maintains, violated Lear's civil rights. In addition, the plaintiff alleges that John Cheshire ("Cheshire") was present when Lear was beaten and strangled but did nothing to help her; instead choosing to leave her to die at the hands of " a long time known man of Domestic Violence." The plaintiff alleges that these actions by Cheshire also violated Lear's civil rights. Finally, the plaintiff maintains that Lear was given no satisfaction in the jury trial conducted in Hampshire County because Pritts was convicted only of involuntary manslaughter. The plaintiff appears to allege that Donald See ("See"), who is apparently Pritts' stepfather and the deputy or ex-deputy sheriff of Hampshire County, exerted influence over the jury selection. The plaintiff maintains that this alleged influence also violated Lear's civil rights. As relief, the plaintiff seeks Three Hundred Million Dollars in criminal and monetary damages against the three defendants.

### III. ANALYSIS

42 U.S.C. §1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a

person acting under color of state law deprived Lear of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

On March 10, 2009, in an effort to determine this Court's jurisdiction over this matter, the undersigned ordered the plaintiff to provide the specific official capacities held by Pritts and Cheshire when they allegedly committed the acts against Lear raised in the complaint, and further, whether they were acting in their official capacities or individually. In addition, the plaintiff was ordered to provide the specific acts committed by See which violated 42 U.S.C. § 1983. In addition, he was directed to identify the official capacity See held when he allegedly committed the acts raised in the complaint, and further, whether he was acting in his official or individual capacity.

On April 1, 2009, the plaintiff filed his response as requested. In it, he states that has never accused See of wrongfully influencing Pritts murder trial in Hampshire County. (Doc. 18, p.1). Instead, he simply contends that See was working as an appointed Deputy Sheriff or elected Sheriff of Hampshire County, and had he "not directly violated not only my daughters State of West Virginia's Laws and Both West Virginia's Civil Rights and United States Constitutional Rights and Civil Rights of other helpless females, my child would more than probably be yet still alive." (Doc. 18, p. 2). Clearly, even if See was the Deputy Sheriff or Sheriff of Hampshire County, the plaintiff has identified no specific action taken in that official capacity that violated Lear's civil rights. In addition, with respect to Pritts and Cheshire, the plaintiff has identified no official capacity with respect to either. Therefore, the plaintiff's complaint fails to state a claim under 42 U.S.C. § 1983 and is due to be dismissed. Moreover, even if the plaintiff were able to establish that Pritts, Cheshire, and See acted under color of state law and committed specific acts that deprived Lear of the rights guaranteed by the Constitution or federal law, his complaint would still be subject to dismissal.

3

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990). "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." Pluett v. Frasier, 355 F.3d 381, 383 (5th Cir. 2004). "Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." Id.

The plaintiff's claim for Lear's death is governed by West Virginia's Wrongful Death Statute, West Virginia Code § 55-7-5:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (If death had not ensued) have entitled the party injured to maintain an action to recover damages...then... the person who... would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured....

Therefore, under § 1988, claims based on West Virginia's wrongful death statutes may proceed under § 1983. See Hoover v. Trent, 2008 WL 2992987 (N.D.W.Va. 2008). However, West Virginia Code § 55-7-6 provides that a wrongful death action "shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed in this State, or any other state, territory or district of the United States..." Here, the plaintiff is not the personal representative of Lear, but rather her mother, Yolanda Riddle has been so appointed. (Doc. 18, p. 4). Therefore, the plaintiff does not have standing to bring this action. Finally, even if the plaintiff had standing, a wrongful death action must be commenced within two years after the death

4

of the deceased person.  See West Virginia Code §55-7-6(d).  Lear's body was found on October 31, 2006  (Doc. 18-2, p. 5), and her death certificate estimated her death as occurring on October 28, 2006. Inasmuch as this complaint was not filed until January 9, 2009, it is clear that the two year statute of limitations had expired.

## IV.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.  It is further recommended that all pending motions (docs. 7, 16, 17, 21, 22, 26, 27, and 28) be **DENIED AS MOOT.**

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: May 29, 2009

                                                                <u>/s/ James E. Seibert</u>
                                                                 JAMES E. SEIBERT
                                                                 UNITED STATES MAGISTRATE JUDGE